POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANE MERRIAM, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>       v.<br><br>AVIS BUDGET GROUP, INC., JOSEPH A. FERRARO, and IZILDA P. MARTINS,<br><br>             Defendants. | Case No.<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Shane Merriam ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's

attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Avis Budget Group, Inc. ("Avis Budget" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Avis Budget securities between February 16, 2024 and February 10, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.    Avis Budget, together with its subsidiaries, provides car and truck rentals, car sharing, and ancillary products and services to businesses and consumers in the Americas, Europe, the Middle East and Africa, Asia, and Australasia. Among

other services, the Company operates the Avis brand, which offers vehicle rental and other mobility solutions to commercial and leisure segments of the travel industry; the Zipcar brand, a car sharing network; and the Budget brand, a supplier of vehicle rental and other mobility solutions focused primarily on more value-conscious customers. According to the Company, its global rental fleet totaled approximately 695,000 vehicles in 2024.

3.      With hundreds of thousands of vehicles in its rental fleet, effective fleet management is critical to Avis Budget's profitability. This includes, among other things, ensuring proper fleet rotation—*i.e.*, the replacement of older vehicles in a rental fleet with newer models. To execute this process effectively, a company must rotate its vehicles at an appropriate pace. If rotation is too gradual, older models may begin depreciating in value even as their maintenance costs steadily increase. Conversely, if rotation is too accelerated, a company risks prematurely removing vehicles before they have reached the end of their "useful lives"—the period during which the vehicles have recoverable value.

4.      In discussing the significance of fleet rotation to its business and profitability, Avis Budget has stated that "[h]ow you buy cars and deliver them into your business and then exit cars out at the proper time at the right place is extremely critical" and, when analyzing buying and selling fleet vehicles, "one of the more important and overlooked aspects is how you rotate your fleet" given that "it allows

you to have or maintain a certain age level or mileage level that is both operationally prudent from an efficiency standpoint as it turns out to be in light vehicle costs as well as from a customer acceptance. ***And we've been doing that***."[1]

5.     In the years following the Covid-19 pandemic, due to a shortage of fleet supply, automobile rental companies were required to purchase fleet vehicles at higher prices than historic norms.  To address this challenge, Avis Budget decelerated its fleet rotation by maintaining vehicles within its rental fleet for a longer period of time.  As the Company stated in an earnings call held with investors and analysts to discuss its Q4 2024 results (the "Q4 2024 Earnings Call"), this practice purportedly "allowed [the Company] to depreciate vehicles across a flatter portion of the residual value curve and manage [its] fleet purchase to an appropriate return on invested capital."

6.     However, in the fourth quarter of 2024, prices for vehicles model year 2025 began returning to normalized levels.  In response, unbeknownst to investors, Avis Budget implemented a "change in strategy to significantly accelerate fleet rotations," purportedly designed to "create more certainty in [Avis Budget's] fleet costs and better position [the Company] for sustainable growth for 2025 and beyond."

---

[1] All emphases included herein are added unless otherwise indicated.

7.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Avis Budget crafted and implemented a plan to significantly accelerate its fleet rotation in the fourth quarter of 2024; (ii) the foregoing acceleration shortened the useful life of the majority of the Company's vehicles in the Americas segment, thereby reducing their recoverable value; (iii) as a result, Avis Budget would be forced to recognize billions of dollars in impairment charges and incur substantial losses; (iv) all the foregoing was likely to, and did, have a significant negative impact on the Company's financial results; (v) accordingly, Avis Budget's financial and/or business prospects were overstated; and (vi) as a result, Defendants' public statements were materially false and misleading at all relevant times.

8.    On February 11, 2025, Avis Budget issued a press release reporting its financial results for the fourth quarter and full year 2024.  Among other items, Avis Budget reported a loss of $1.96 billion, or $55.66 per share, for the quarter, compared to a profit of $259 million, or $7.10 per share, for the same period in the prior year. Avis Budget attributed these results to "a change in strategy to significantly accelerate fleet rotations, which resulted in shortening the useful life of the majority

of our vehicles in the Americas segment[,]" causing "a one-time non-cash impairment of $2.3 billion and other non-cash related charges of $180 million."

9.      The press release also announced that the Company's Chief Executive Officer ("CEO"), Defendant Joseph A. Ferraro ("Ferraro"), "will transition from CEO to Board Advisor, effective June 30, 2025" and that "Brian Choi, the Company's Chief Transformation Officer, will take over as CEO, effective July 1, 2025."

10.      On this news, Avis Budget's stock price fell $6.12 per share, or 6.82%, to close at $83.59 per share on February 11, 2025.

11.      Then, on February 12, 2025, Avis Budget hosted the Q4 2024 Earnings Call.  During the Q&A portion of the Q4 2024 Earnings Call, Defendant Ferraro indicated that the Company was aware that accelerating fleet rotation would likely result in a significant impairment charge.  Specifically, when asked to discuss the competitive landscape of the automobile rental industry in the wake of the normalizing price levels of vehicles model year 2025, Defendant Ferraro responded, in relevant part, "I can only comment on what we're trying to do as far as our fleet rotation. None of us took that impairment slightly, ***and we thought long and hard about it***."

12.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

15.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Avis Budget is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

16.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.     Plaintiff, as set forth in the attached Certification, acquired Avis Budget securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.     Defendant is a Delaware corporation with principal executive offices located at 379 Interpace Parkway, Parsippany, New Jersey 07054.  Avis Budget's common stock trades in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "CAR."

19.     Defendant Ferraro has served as Avis Budget's President and CEO at all relevant times.

20.     Defendant Izilda P. Martins ("Martins") has served as Avis Budget's Executive Vice President and Chief Financial Officer at all relevant times.

21.     Defendants Ferraro and Martins are collectively referred to herein as the "Individual Defendants."

22.     The Individual Defendants possessed the power and authority to control the contents of Avis Budget's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Avis Budget's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Avis

Budget, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

23.     Avis Budget and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Avis Budget, together with its subsidiaries, provides car and truck rentals, car sharing, and ancillary products and services to businesses and consumers in the Americas, Europe, the Middle East and Africa, Asia, and Australasia. Among other services, the Company operates the Avis brand, which offers vehicle rental and other mobility solutions to commercial and leisure segments of the travel industry; the Zipcar brand, a car sharing network; and the Budget brand, a supplier of vehicle rental and other mobility solutions focused primarily on more value-conscious customers. According to the Company, its global rental fleet totaled approximately 695,000 vehicles in 2024.

25.     With hundreds of thousands of vehicles in its rental fleet, effective fleet management is critical to Avis Budget's profitability.  This includes, among other things, ensuring proper fleet rotation—*i.e.*, the replacement of older vehicles in a rental fleet with newer models.  To execute this process effectively, a company must rotate its vehicles at an appropriate pace.  If rotation is too gradual, older models may begin depreciating in value even as their maintenance costs steadily increase.  Conversely, if rotation is too accelerated, a company risks prematurely removing vehicles before they have reached the end of their "useful lives"—the period during which the vehicles have recoverable value.

## Materially False and Misleading Statements Issued During the Class Period

26.     The Class Period begins on February 16, 2024, when Avis Budget filed an Annual Report on Form 10-K with the SEC during pre-market hours, reporting the Company's financial and operating results for the quarter and year ended December 31, 2023 (the "2023 10-K").  In providing an overview of the Company's strategy, the 2023 10-K stated, in relevant part:

> ***For 2024, we expect our strategy to continue to primarily focus on customer experience and costs to strengthen our Company, maximize profitability, and deliver stakeholder value***. To execute our strategy, we expect to continue to leverage marketing and invest in technology and infrastructure to support our vehicle related rentals. ***With respect to costs, we aim to achieve operational excellence and invest strategically to lower costs over the long term***.

27.    Further, the 2023 10-K purported to warn that "[e]arnings for future periods ***may*** be impacted by impairment charges for goodwill and intangible assets[,]" while downplaying the risk of the same, stating, in relevant part:

> We assess goodwill and indefinite-lived intangible assets for impairment each year, or more frequently if circumstances suggest an impairment may have occurred. We have determined in the past and ***may*** again determine in the future that a significant impairment has occurred in the value of our goodwill. Additionally, we have a significant amount of identifiable intangible assets and fixed assets that ***could*** also be subject to impairment. ***If*** we determine that a significant impairment has occurred in the value of our unamortized intangible assets or fixed assets, we ***could*** be required to write off a portion of our assets, which ***could*** adversely affect our consolidated financial condition or our reported results of operations.

Plainly, the foregoing risk warnings were generic, catch-all provisions that were not tailored to Defendants' actual known risks regarding the likelihood of Avis Budget recognizing a significant impairment charge in the near future.

28.    Appended to the 2023 10-K as an exhibit was a signed certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, attesting that "[t]he information contained in the [2023 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

29.    On May 2, 2024, Avis Budget filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2024 (the "Q1 2024 10-Q"). The Q1 2024 10-Q included a

substantively similar description of the Company's strategy as discussed, *supra*, in ¶ 26.

30.    Further, in listing "factors and assumptions [that] ***could*** affect [Avis Budget's] future results," the Q1 2024 included, among others:

- a change in our fleet costs, including as a result of a change in the cost of new vehicles, resulting from inflation or otherwise, manufacturer recalls, disruption in the supply of new vehicles, including due to labor actions or otherwise, shortages in semiconductors used in new vehicle production, and/or a change in the price at which we dispose of used vehicles either in the used vehicle market or under repurchase or guaranteed depreciation programs;

*** 

- our ability to successfully implement or achieve our business plans and strategies, achieve and maintain cost savings and adapt our business to changes in mobility[.]

Plainly, the foregoing warnings were generic, catch-all provisions that were not tailored to Defendants' actual known risks regarding the likelihood of Avis Budget recognizing a significant impairment charge in the near future.

31.    Appended to the Q1 2024 10-Q as an exhibit was a signed certification pursuant to SOX by the Individual Defendants, attesting that "[t]he information contained in the [Q1 2024 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

32.    On August 6, 2024, Avis Budget filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the

quarter ended June 30, 2024 (the "Q2 2024 10-Q"). The Q2 2024 10-Q included a substantively similar description of the Company's strategy as discussed, *supra*, in ¶ 26, and substantively similar generic, catch-all warnings that were not tailored to Defendants' actual known risks regarding the likelihood of Avis Budget recognizing a significant impairment charge in the near future as discussed, *supra*, in ¶ 30.

33.     Appended to the Q2 2024 10-Q as an exhibit was a signed certification pursuant to SOX by the Individual Defendants, attesting that "[t]he information contained in the [Q2 2024 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

34.     On October 31, 2024, Avis Budget issued a press release announcing the Company's Q3 2024 results. The press release stated, in relevant part:

> "We maintained a strong focus on pricing throughout the quarter, prioritizing higher margin business which allowed us to keep our revenue per day stable with the Americas nearly flat," said [Defendant] Ferraro[.] "Vehicle utilization improved by approximately 2 points throughout the Company as we exercised strong fleet discipline. Our U.S. model year 2025 buy is well underway and expected to drive significant savings as these vehicles are rotated into our fleet. Lastly, the holidays look strong, and we believe we are well positioned to capitalize on this demand."

Conspicuously, the foregoing positive statements regarding the rotation of model year 2025 vehicles into the Company's fleet failed to acknowledge the likelihood of Avis Budget recognizing a significant impairment charge in the near future.

35.     On November 1, 2024, Avis Budget filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2024 (the "Q3 2024 10-Q"). The Q3 2024 10-Q included a substantively similar description of the Company's strategy as discussed, *supra*, in ¶ 26, and substantively similar generic, catch-all warnings that were not tailored to Defendants' actual known risks regarding the likelihood of Avis Budget recognizing a significant impairment charge in the near future as discussed, *supra*, in ¶ 30.

36.     Appended to the Q3 2024 10-Q as an exhibit was a signed certification pursuant to SOX by the Individual Defendants, attesting that "[t]he information contained in the [Q3 2024 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

37.     That same day, Avis Budget hosted an earnings call with investors and analysts to discuss the Company's Q3 2024 results (the "Q3 2024 Earnings Call"). During the scripted portion of the Q3 2024 Earnings Call, Defendant Ferraro stated, in relevant part:

> So to recap, we reported a strong third quarter with improved vehicle utilization through ongoing fleet discipline. Our model year 2025 buy is largely complete, and we expect to have substantially lower holding costs as these vehicles rotate on our fleet. We'll continue to prioritize high-margin business while balancing volume.

38.    Also during the scripted portion of the call, Defendant Martins stated, in relevant part:

> Our model year 2025 fleet purchase is more affordable. Since we are largely complete with our negotiations, we can say holding costs should improve. We believe over time, our depreciation rate will return to historic levels as we rotate out of the older fleet, which we purchased during the supply-constrained pandemic years and in fleet the model year 2025, which represents a more normalized fleet buy.

Conspicuously, the foregoing positive statements regarding the rotation of model year 2025 vehicles into the Company's fleet failed to acknowledge the likelihood of Avis Budget recognizing a significant impairment charge in the near future.

39.    The statements referenced in ¶¶ 26-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Avis Budget crafted and implemented a plan to significantly accelerate its fleet rotation in the fourth quarter of 2024; (ii) the foregoing acceleration shortened the useful life of the majority of the Company's vehicles in the Americas segment, thereby reducing their recoverable value; (iii) as a result, Avis Budget would be forced to recognize billions of dollars in impairment charges and incur substantial losses; (iv) all the foregoing was likely to, and did, have a significant negative impact on the Company's financial results; (v) accordingly, Avis Budget's financial and/or business prospects were overstated; and

15

(vi) as a result, Defendants' public statements were materially false and misleading at all relevant times.

## **The Truth Emerges**

40.    On February 11, 2025, Avis Budget issued a press release reporting its financial results for the fourth quarter and full year 2024.  The press release stated, in relevant part:

> We ended 2024 with fourth quarter revenues of $2.7 billion, driven by strong leisure holiday travel. ***Net loss was nearly $2 billion, and Adjusted EBITDA[] was a loss of $101 million***. Full year revenues were $11.8 billion, driven by sustained year-over-year demand. Net loss was $1.8 billion, and Adjusted EBITDA was $628 million.
>
> ***Our net loss and Adjusted EBITDA results reflect a change in strategy to significantly accelerate fleet rotations, which resulted in shortening the useful life of the majority of our vehicles in the Americas segment. The financial impact of this decision was a one-time non-cash impairment of $2.3 billion and other non-cash related charges of $180 million***.

> ***

| | | | | | | |
|---|---|---|---|---|---|---|
| | | Avis Budget Group, Inc. | | | | |
| | | SUMMARY DATA SHEET (Unaudited) | | | | |
| | | (In millions) | | | | |
| | | **Three Months Ended December 31,** | | | | |
| | | **2024** | | **2023** | **% Change** | |
| **Income Statement and Other Items** | | | | | | |
| Revenues | $ | 2,710 | $ | 2,764 | (2)% | $ |
| Income (loss) before income taxes | | (2,841) | | 162 | n/m | |
| Net income (loss) attributable to Avis Budget Group, Inc. | | (1,958) | | 259 | n/m | |
| Adjusted EBITDA[(a)] | $ | (101) | $ | 311 | n/m | $ |

**Avis Budget Group, Inc.**
**CONSOLIDATED STATEMENTS OF OPERATIONS (Unaudited)**
**(In millions, except per share data)**

| | | Three Months Ended December 31, | | |
| --- | --- | --- | --- | --- |
| | | 2024 | | 2023 |
| Revenues | $ | 2,710 | $ | 2,764 | $ |
| | | | | |
| Expenses | | | | |
| Operating | | 1,563 | | 1,350 |
| Vehicle depreciation and lease charges, net | | 801 | | 582 |
| Selling, general and administrative | | 312 | | 309 |
| Vehicle interest, net | | 217 | | 223 |
| Non-vehicle related depreciation and amortization | | 60 | | 53 |
| Interest expense related to corporate debt, net: | | | | |
| Interest expense | | 92 | | 75 |
| Early extinguishment of debt | | 18 | | 4 |
| Long-lived asset impairment and other related charges | | 2,470 | | — |
| Restructuring and other related charges | | 14 | | 4 |
| Transaction-related costs, net | | 1 | | 2 |
| Other (income) expense, net | | 3 | | — |
| Total expenses | | 5,551 | | 2,602 |
| | | | | |
| Income (loss) before income taxes | | (2,841) | | 162 |
| Provision for (benefit from) income taxes | | (884) | | (98) |
| Net income (loss) | | (1,957) | | 260 |
| Less: Net income attributable to non-controlling interests | | 1 | | 1 |
| Net income (loss) attributable to Avis Budget Group, Inc. | $ | (1,958) | $ | 259 | $ |
| | | | | |
| Earnings (loss) per share | | | | |
| Basic | $ | (55.66) | $ | 7.18 | $ |
| Diluted | $ | (55.66) | $ | 7.10 | $ |

41.    In addition, the press release also announced that Defendant Ferraro "will transition from CEO to Board Advisor, effective June 30, 2025" and that "Brian Choi, the Company's Chief Transformation Officer, will take over as CEO, effective July 1, 2025."

42.    On this news, Avis Budget's stock price fell $6.12 per share, or 6.82%, to close at $83.59 per share on February 11, 2025.

43.    Then, on February 12, 2025, Avis Budget hosted the Q4 2024 Earnings Call.  During the Q&A portion of the Q4 2024 Earnings Call, Defendant Ferraro indicated that the Company was aware that accelerating fleet rotation would likely result in a significant impairment charge.  Specifically, when asked to discuss the

competitive landscape of the automobile rental industry in the wake of the normalizing price levels of vehicles model year 2025, Defendant Ferraro responded, in relevant part, "I can only comment on what we're trying to do as far as our fleet rotation. None of us took that impairment slightly, ***and we thought long and hard about it***."

44.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

45.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Avis Budget securities during the Class Period (the

"Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Avis Budget securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Avis Budget or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and

securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Avis Budget;

- whether the Individual Defendants caused Avis Budget to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Avis Budget securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class to individually redress the wrongs done to them.

There will be no difficulty in the management of this action as a class action.

52.     Plaintiff will rely, in part, upon the presumption of reliance established

by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Avis Budget securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Avis Budget securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53.     Based upon the foregoing, Plaintiff and the members of the Class are

entitled to a presumption of reliance upon the integrity of the market.

54.     Alternatively, Plaintiff and the members of the Class are entitled to the

presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens*

*of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as

Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

55.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Avis Budget securities; and (iii) cause Plaintiff and

other members of the Class to purchase or otherwise acquire Avis Budget securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Avis Budget securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Avis Budget's finances and business prospects.

59.     By virtue of their positions at Avis Budget, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each

Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

60.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Avis Budget, the Individual Defendants had knowledge of the details of Avis Budget's internal affairs.

61.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Avis Budget.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Avis Budget's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Avis Budget securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Avis Budget's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Avis Budget securities at artificially inflated prices and relied upon the price of the securities, the integrity of

the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

62.     During the Class Period, Avis Budget securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Avis Budget securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Avis Budget securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Avis Budget securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

65.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Individual Defendants participated in the operation and management of Avis Budget, and conducted and participated, directly and indirectly, in the conduct of Avis Budget's business affairs.  Because of their senior positions, they knew the adverse non-public information about Avis Budget's misstatement of income and expenses and false financial statements.

67.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Avis Budget's financial condition and results of operations, and to correct promptly any public statements issued by Avis Budget which had become materially false or misleading.

68.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Avis Budget disseminated in the marketplace during the Class Period concerning Avis Budget's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Avis Budget to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Avis Budget within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Avis Budget securities.

69.     Each of the Individual Defendants, therefore, acted as a controlling person of Avis Budget.  By reason of their senior management positions and/or being directors of Avis Budget, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Avis Budget to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Avis Budget and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Avis Budget.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  April 25, 2025              Respectfully submitted,

                                                POMERANTZ LLP

                                                */s/ Thomas H. Przybylowski*
                                                Thomas H. Przybylowski

Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*